## Howell v. Commonwealth.

(Decided March 8, 1927.)

### Appeal from Harlan Circuit Court.

Homicide—Mental Suffering Because of Wrongful Conduct of Defendant's Wife with Deceased Held Not to Justify Taking Deceased's Life.—Defendant's mental suffering by reason of wrongful conduct of his wife with deceased held not to have justified him in taking deceased's life.

LYTLE & MORGAN for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellant was convicted in the Harlan circuit court at its November term, 1926, of the crime of murder and his punishment fixed at life imprisonment. His victim was Lee Foley. The killing took place at the little town of Kitts, about one mile and a half from Harlan. Be-

tween Harlan and Kitts is a swinging bridge across one of the forks of Cumberland river. Beyond the swinging bridge and about seventy-five or one hundred yards towards Harlan is located the barber shop of Jim Moss. The killing took place in the barber shop. Appellant on the morning of the killing was near the swinging bridge talking to W. P. Thomas and William Meeks when T. F. Easley came along driving a Studebaker automobile. Howell and Meeks asked Easley if he would take them to town, and he invited them to get in his automobile. Easley was going to stop at the Moss barber shop and pick up John Sexton. When they arrived at the barber shop appellant, Howell, and Meeks got out of the car and went into the barber shop. Sexton was not ready to go to town so Easley did not wait for him.

As Easley went from the swinging bridge to the barber shop in his automobile, with appellant and Meeks riding with him, he saw the deceased, Lee Foley, but he does not know whether appellant saw Foley. After appellant went into the barber shop Lee Foley came towards the shop and stopped and engaged in a conversation with John Sexton just outside the door. Sexton was standing between the door and Foley. Appellant came from inside the barber shop to the door, shoved Sexton to one side and commenced shooting Foley. Three or four shots were fired. Foley died immediately. The eye-witnesses do not disagree as to what took place at the time Foley was killed. He was standing a few feet outside the door of the barber shop when appellant came from inside the barber shop and shot him down when he was doing nothing and making no effort to harm appellant in any way. It is true that a pistol was found between his coat and his body when he was picked up off the ground, but no witness other than appellant appears to have seen any effort on the part of Foley to draw his pistol. Appellant had two pistols on the occasion, one of which he had obtained a few hours before the killing.

A number of witnesses testified for appellant. He testified in his own behalf and gave as an excuse for the killing that he had learned from several persons that Foley had threatened his life. When he saw Foley approaching the door of the barber shop he thought that Foley was coming to kill him, and that he saw that Foley was getting ready to draw a weapon when he shot him.

That there had been threats made by Foley is thoroughly established by the evidence. The wife of appellant and Foley had been too intimate, and Foley had talked about it, and in his talk he made threats against appellant in the event appellant attempted to do anything about the affair existing between him and appellant's wife. The trial court allowed the evidence in behalf of appellant in this respect to take a wide range. Letters which appellant's wife had written to Foley were introduced as evidence, and it may be said that it was thoroughly established that there was an undue intimacy between the wife and Foley. Appellant and his wife had separated over her infatuation for Foley, but they had gone back together and spent the night at a boarding house together before the morning of the killing.

No one can read this record without coming to the conclusion that appellant must have undergone much mental suffering by reason of the wrongful conduct of his wife, and naturally he was much embittered towards Foley. This, however, did not justify him in taking the life of Foley and it affords little excuse for his act. When he knew that his wife had been unfaithful to him he was justified in separating from her, but he was not justified in slaying the man with whom she had been improperly familiar. Husbands can not make a woman virtuous by slaying her paramour, and the law should ever frown on the effort of any man to protect an unfaithful wife in this way or to thus reclaim her from the error of her way. It is certain from this evidence that at the moment of the shooting appellant was not justified in his action, and neither should he expect to escape punishment for what he did, although his provocation may have been great. Although he had been humiliated, threats had been made against him and he was in fear of the man he slew, yet as he slew him without any legal justification he must stand the consequences of his act.

Counsel for appellant in his brief complains only of the alleged errors of the court in the admission and exclusion of evidence. We have carefully considered all of his objections and we find little merit in them. Certainly there was no error which was prejudicial to the substantial rights of the appellant. He had a fair trial and that is all that he was entitled to.

Judgment is affirmed.